**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

TERRY LITTERAL,

          Petitioner,

v.                                         Case No. 08-CV-11172

CARMEN PALMER,

          Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
### AND DENYING CERTIFICATE OF APPEALABILITY

      Petitioner Terry Litteral is presently incarcerated at the Oaks Correctional Facility

in Manistee, Michigan pursuant to convictions on four counts of first-degree criminal

sexual conduct.  He has filed a *pro se* petition for a writ of habeas corpus, alleging that

his convictions were obtained in violation of his constitutional rights.  For the reasons

set forth below, the court denies the petition.

### I.  BACKGROUND

      Petitioner's convictions arise from the sexual assault of one child over a period of

eight years.  The Michigan Court of Appeals summarized the testimony adduced at

Petitioner's trial as follows:

>       The jury convicted Litteral of sexually assaulting his former
> fiancée's daughter, who was age 18 at the time of trial.  The victim was
> four years old when Litteral moved in with the victim and her mother.  The
> victim's mother and defendant later had three children together.
> According to the victim, Litteral sexually assaulted her intermittently from
> age 4 until age 12, when she and her three younger siblings were
> removed from the home in 1998 because of neglect.  The four charged
> incidents occurred in 1997 and 1998, when the victim was 10 and 11
> years old, and involved one act of sexual intercourse, two acts of digital

penetration, and one act of oral sex.  During most of the incidents, the victim's mother was at work or "passed out" from the use of alcohol.  In May 1999, while in foster care, the victim first disclosed the sexual assaults.  In July 1999, the victim's medical examination revealed that "there was no hymenal tissue left at all," indicating that "there's been repeated intercourse."  The examination also revealed that the victim had a sexually transmitted disease (STD).

The victim testified that, although Litteral assaulted her on numerous occasions, she could recall specific details of only a few incidents.  On one occasion, according to the victim, her mother was at work and, because she was grounded, she asked Litteral for permission to go out.  The victim said that Litteral responded that he would allow her to leave in exchange for a "blowjob," and the victim agreed.  The victim stated that during the half-hour to hour duration of this encounter, Litteral digitally penetrated her and that she performed oral sex on him.  The victim testified that on another occasion, she was grounded and wanted to go to her aunt's house, Litteral "bribed [her]," and had sexual intercourse with her until he ejaculated.  The victim indicated that Litteral first had sexual intercourse with her on her 11th birthday.  The victim explained that whenever she was "grounded or anything like that . . . or wanted money [she would] just do whatever [Litteral] said."  The victim first questioned Litteral's actions after she attended a school sex education class.  According to the victim, when she questioned Litteral, he assured her that "it's okay, [he is her] father."

The victim explained that she did not reveal the assaults to anyone because Litteral threatened that "if [she] ever told anybody he'd kill [her]" and "hurt [her] mom."  The victim testified that her aunt and uncle, Tammy Turner and Scott Anderson, once walked in while Litteral was assaulting her, but did not call the police.  Turner and Anderson testified that, on one occasion, they entered a bedroom and observed Litteral and the victim in the bed under the covers.  Turner could see that neither had on a shirt, but could not recall what they were doing.  Anderson indicated that both were naked, and that Litteral jumped off the victim when he and Turner entered the room.  On a different occasion, Turner and Anderson saw Litteral and the victim in bed next to each other.  Anderson indicated that they were naked, but Turner could not recall if they were clothed.  Anderson and Turner claimed to be intimidated by Litteral's family, and Turner explained that the victim's maternal grandfather dissuaded her from contacting the police.  Turner and Anderson spoke to the victim's mother, who is Anderson's sister, and Turner indicated that she was "in denial," and "didn't want to discuss it."  The victim testified that her mother was aware of the assaults, but did nothing.

The victim testified that her younger brother also witnessed some of the sexual assaults when he was four or five years old. The brother, who was 12 at the time of trial, testified that he saw Litteral "drag the victim up the stairs," and "have sex" with her. In total, the brother saw Litteral and the victim "have sex" on two to five occasions. The brother also recalled that, on two or more occasions, when Litteral and the victim were in a locked room, his mother "was pounding" on the door. On one occasion, the brother heard his mother direct Litteral to "get off of" the victim.

Litteral testified on his own behalf and denied any wrongdoing. He maintained that the victim was promiscuous.

*People v. Litteral*, No. 261330, slip op. at 1-2 (Mich. Ct. App. Nov. 16, 2006).

Petitioner was convicted of four counts of first-degree criminal sexual conduct. On February 16, 2005, he was sentenced to four concurrent terms of forty to eighty years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I.    The defendant was unlawfully deprived of the effective assistance of trial counsel when trial counsel failed to raise and preserve an insanity or temporary insanity defense.

II.   The trial court deprived the defendant of his due process and equal protection rights to a fair trial when it denied his pretrial motion to dismiss on grounds of unreasonable delay in bringing the prosecution of this case and when it denied the defense motion to produce the alleged victim's counseling and therapy records in camera, and when it denied the defense motion to produce the alleged victim's confidential juvenile records.

III.  The trial court deprived the defendant of his due process and equal protection rights to a fair trial when it permitted to be introduced testimony about statements the alleged victim's mother made about a sexually transmitted disease the victim claimed she contracted from the defendant and about other acts the defendant is alleged to have committed.

IV.   The trial court violated the United States and Michigan constitutions and the principles of proportionality in sentencing the defendant to prison terms of 40-80 years on each of the CSC 1 convictions.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v.*
*Litteral*, No. 261330 (Mich. Ct. App. Nov. 16, 2006).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court,
raising the same claims presented to the Michigan Court of Appeals. The Michigan
Supreme Court denied leave to appeal. *People v. Litteral*, No. 132670 (Mich. Mar. 26,
2007).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises
the same claims raised in state court and the following additional claim:

> V.  The trial court abused its discretion when it denied motion to remand to
> the trial court for an evidentiary hearing on the issue of ineffective
> assistance of counsel.

## II. STANDARD

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an
>      unreasonable application of, clearly established Federal law,
>      as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
>      determination of the facts in light of the evidence presented
>      in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this court must presume the correctness of state
court factual determinations. *Id.* § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the
state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

In his first claim, Petitioner argues that he received ineffective assistance of counsel. Petitioner claims that trial counsel was ineffective for failing to secure a medical evaluation of Petitioner to support an insanity or temporary insanity defense. He maintains that such a defense could have been mounted based upon the nature of his offense and his regular alcohol use and occasional drug use.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors,

5

the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  A court's review of counsel's performance must be "highly deferential." *Id.* at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland.  Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* at 1420 (internal quotation omitted).

The Michigan Court of Appeals held that defense counsel was not ineffective for failing to pursue an insanity defense.  The court reasoned that Petitioner failed to present any affidavits or other documentation on appeal to support a finding that he had any medical or psychological condition that would warrant exploration of an insanity defense.  Petitioner consistently maintained his innocence and never argued that he lacked the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law.  The court of appeals further found that references in the presentence investigation report (PSIR) to Petitioner exhibiting the behavior of a pedophile, drinking regularly, and experimenting with illegal drugs, did not require investigation or presentation of an insanity defense.  The reference to pedophilia was not made by a medical expert and Petitioner provided no authority to support a finding that pedophilia is a mental illness that can form the basis for an insanity defense.  The state court, therefore, concluded that counsel was not ineffective in this regard.

With regard to the evidence of Petitioner's alcohol and substance use and abuse,

the state court held that, because voluntary intoxication cannot form the basis for an insanity defense, counsel was not ineffective in failing to raise it as a defense.

The Michigan Court of Appeals's decision was not contrary to or an unreasonable application of *Strickland*. In his habeas petition, Petitioner provides no more support for his claim that he was mentally ill than he did in his state court briefs.

The PSIR characterizes Petitioner as a pedophile, but that characterization does not support an insanity defense. First, the report was not prepared by a medical professional and provides a description of Petitioner's conduct rather than a diagnosis of any condition. Second, as noted by the court of appeals, Petitioner provides no support, and this court has found none, for his argument that pedophilia is a mental illness that can form the basis for an insanity defense. *Cf. United States v. Black*, 116 F.3d 198, 200-01 (7th Cir. 1997) (rejecting claim that prosecution for receiving and distributing child pornography violated Eighth Amendment because it punished defendant for being a pedophile; defendant failed to show that his conduct was involuntary or uncontrollable). Finally, Petitioner's trial testimony simply denied that the sexual acts occurred; his testimony is inconsistent with an argument that the acts occurred but Petitioner did not appreciate their wrongfulness or could not conform his conduct to the law.

Moreover, even assuming counsel was deficient in failing to present an insanity defense, Petitioner must also show that he was prejudiced by the deficiency. In this context, he must show "that there is a 'reasonable probability' that he would have prevailed on his insanity defense had he pursued it." *Knowles*, 129 S. Ct. at 1422. Given the absence of a factual basis for Petitioner's claim, the state court's conclusion

that Petitioner was not prejudiced by the failure to present an insanity defense cannot be said to be contrary to or an unreasonable application of federal law.

### B. Denial of Pretrial Motions

Petitioner next argues that the trial court violated his right to a fair trial when it denied the following pretrial motions: motion to dismiss on grounds of unreasonable pre-arrest delay; motion for *in camera* review of victim's counseling and therapy records; and motion to produce victim's confidential juvenile records.

### 1. Pre-Arrest Delay

The Due Process Clause of the Fifth Amendment provides a defendant limited protection against preindictment delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also United States v. Marion*, 404 U.S. 307, 324 (1971). In determining whether a preindictment delay violates due process, a court must decide whether the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency." *Lovasco*, 431 U.S. at 790 (internal quotations omitted). "In order to prevail on a claim of unconstitutional pre-indictment delay, a defendant must demonstrate that he suffered substantial prejudice to his defense as a result of the delay and that the prosecution intentionally delayed to gain a tactical advantage over him." *Smith v. Caruso*, 53 F. App'x 335, 336 (6th Cir. 2002) (citing *Lovasco*, 431 U.S. at 790).

In this case, the police were alerted to the allegations of sexual assault in the spring of 1999. A felony complaint was issued in September 2003, and Petitioner was bound over on the charges on October 30, 2003. Petitioner argued that he was prejudiced by the delay because of the death of two potential witnesses between the

time the police learned of the allegations and the time when the complaint was issued. The victim's mother, who, the victim testified, had a general knowledge that Petitioner was assaulting her, died in November 1999.  The victim also testified that a friend once witnessed Petitioner and her engaged in a sexual act.  That friend died in July 2000. Petitioner further alleges prejudice because his memory faded with the passage of time and he was unable to prove he did not have a sexually transmitted disease during the relevant time period.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, citing the *Lovasco* standard, held that Petitioner failed to show that the loss of testimony from these two potential witnesses resulted in "any meaningful impairment of his defense."  *Litteral*, slip op. at 5.  The state court reasoned that Petitioner's conclusory assertion that the lost witnesses "*could*" have given exculpatory testimony was insufficient to establish he suffered substantial prejudice. The lost witnesses were not defense witnesses whose testimony was lost; their relevance to the defense is based upon an unsupported expectation that they may have ultimately provided exculpatory information.  The state court found unpersuasive Petitioner's vague claims of lost memory or physical evidence insufficient to establish substantial prejudice.  The state court also concluded that there was no indication in the record that the delay was used to gain a tactical advantage for the prosecution.

The state court's conclusion that Petitioner's vague allegations of witnesses lost were insufficient to establish prejudice is supported by Supreme Court precedent.  In *Marion*, the Supreme Court held:

Appellees rely solely on the real possibility of prejudice inherent in any

extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

404 U.S. at 325-36.

In this case, Petitioner does not allege that he was prosecuted in violation of the applicable statute of limitations. Therefore, the court concludes that the state court's finding that Petitioner's vague allegations of prejudice were insufficient to warrant reversal and that Petitioner failed to show the delay was an intentional attempt to gain a tactical advantage was not contrary to or an unreasonable application of Supreme Court precedent. The court denies habeas relief on this claim.

## 2. *In Camera* Review of Therapy Records

Next, Petitioner argues that the trial court denied him his right of confrontation when it denied his motion for *in camera* review of victim's counseling and therapy records. Petitioner maintained that the records were relevant to show whether the victim had lodged any sexual abuse allegations against other persons in the past.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence

10

developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405 (quoting *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965)).

While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 307 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)); *see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska*, 415 U.S. 308, 317 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 316. Further, the Supreme

Court has held that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17.

The Michigan Court of Appeals held that the trial court did not err in declining to conduct an *in camera* review of the records. Although the state court did not explicitly address the claim in the context of the Confrontation Clause, the court cited case law which analyzed a request for *in camera* review of medical records in the context of the Confrontation Clause. *Litteral,* slip op. at 6 (citing *People v. Stanaway*, 446 Mich. 643 (1994)). The court of appeals held, in relevant part:

> We . . . reject Litteral's claim that the trial court erred in denying his request for an *in camera* review of the victim's therapy records. . . . Before an *in camera* inspection occurs, a defendant must show "a good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense."[25] "The burden of showing the trial court facts indicating that such information is necessary to a preparation of its defense and in the interests of a fair trial, and not simply a part of a fishing expedition, rests upon the moving party."[26]
>
> Here, Litteral failed to meet his burden of establishing the need for an *in camera* review of the victim's therapy records. Litteral argued that it was necessary for the trial court to conduct an *in camera* review because the victim may have made allegations of sexual abuse against other individuals. We agree with the trial court that Litteral made a "generic claim," "not predicated upon any discernable demonstrable fact." Even on appeal, Litteral has not proffered any specifics regarding the alleged incidents identifying the accused persons. Because Litteral's request was general and based on speculation about what *may* be in the records, he was not entitled to an *in camera* review.
>
> ------------------------------------------
>
> [25]*People v. Stanaway*, 446 Mich. 643, 676-677; 521 N.W.2d 557 (1994).
>
> [26]*Id.* at 680, quoting *People v. Maranian*, 359 Mich. 361, 368; 102 N.W.2d 568 (1960).

*Litteral*, slip op. at 6.

Under Michigan law, a general unqualified psychiatrist/patient privilege exists with regard to confidential information acquired from an individual consulting a psychologist in a professional capacity that is necessary for the psychologist to render services. Mich. Comp. Laws § 333.18237 (West Supp. 1996). The Supreme Court also has recognized a psychotherapist-patient privilege. *Jaffee v. Redmond*, 518 U.S. 1 (1996). The Michigan Court of Appeals held that Petitioner failed to overcome this privilege by showing that there was a reasonable probability that the records contained information necessary to his defense. Petitioner has failed to show that the trial court's refusal to review the psychologist's records deprived him of a meaningful opportunity to present a defense. He was permitted adequate opportunity to cross-examine the victim and to question her regarding all aspects of the assaults. The trial court's refusal to review the psychological records *in camera* did not infringe upon Petitioner's opportunity to subject the prosecution's case to meaningful adversarial testing. Thus, the court concludes that the state court's decision that the trial court acted properly in declining to conduct an *in camera* review was not contrary to or an unreasonable application of Supreme Court precedent.

### 3. Right of Confrontation

Finally, Petitioner argues that the trial court also violated his right of confrontation when it denied his motion to produce the victim's confidential juvenile records.

The Sixth Amendment to the Constitution guarantees an accused in a criminal prosecution the right "to be confronted with the witnesses against him." As discussed above, in determining whether the exclusion of evidence or restrictions on cross-

13

examination infringe upon a weighty interest of the accused, the relevant question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

In *Davis v. Alaska*, 415 U.S. 308, 317 (1971), the Supreme Court examined whether the trial court's limits on the cross-examination of a key prosecution witness regarding a prior conviction violated the Confrontation Clause. The defendant, in *Davis*, had been convicted of grand larceny and burglary following a trial in which the court prohibited defense counsel from questioning a key prosecution witness, Green, concerning his juvenile record. Green was the sole witness who placed the defendant at the location where the stolen property was later discovered. At the time of trial and at the time of the events regarding which Green testified, Green was on probation by order of a juvenile court after having been adjudicated a delinquent for burglary. The prosecution moved for a protective order prohibiting defense counsel from questioning Green regarding his juvenile record. In opposing the motion, defense counsel argued that he would not introduce Green's juvenile record as a means of impeaching Green's general character as a truthful person. Rather, he would introduce such testimony to show that at the time that Green was assisting the police in identifying the defendant, he was on probation for burglary. Defense counsel would then argue to the jury that Green acted out of fear or concern that his probation might be in jeopardy. Green, defense counsel theorized, may have identified defendant as a means of directing suspicion away from himself for a crime similar to the crimes for which he was on probation or he may have suffered undue pressure from the police to make an identification or risk

14

possible probation revocation. *Id.* at 310-11.

Defense counsel therefore sought to establish the existence of possible bias and prejudice, causing Green to make a faulty identification. The trial court ruled this testimony inadmissible. The Supreme Court held that the exclusion of such testimony denied petitioner his fundamental constitutional right to present a defense:

> [W]e . . . conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgement as to the weight to place on Green's testimony which provided 'a crucial link in the proof . . . of petitioner's act.' *Douglas v. Alabama*, 380 U.S. at 419, 85 S. Ct. at 1077. The accuracy and truthfulness of Green's testimony were key elements in the State's claim against the petitioner. . . .
>
> We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury. While counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness . . . . On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross examination which "would be constitutional error of the first magnitude . . . ."

*Id.* at 317-18 (quoting *Brookhart v. Janis*, 384 U.S. 1, 3 (1968)).

The Michigan Court of Appeals held that the trial court properly denied the motion to produce confidential juvenile records because the only proceeding that involved the victim was a proceeding concerning the termination of the victim's mother's parental rights. *Litteral*, slip op. at 6. The state court held that there was no legitimate interest for producing those records at trial. *Id.* The state court's opinion was not

contrary to or an unreasonable application of Supreme Court precedent. In contrast to the *Davis* case, the records at issue here were not relevant to the charged crimes nor is anything about the possible contents of those records alleged or shown to have any effect on a motive felt by the victim to lie or to be subject to an improper bias against Petitioner. The absence of the juvenile records did not impede defense counsel's ability to cross-examine the victim regarding her allegations against Petitioner or potential bias against him. Therefore, the court denies habeas relief on this claim.

## C. Admission of Testimony

Petitioner alleges that his right to a fair trial was violated by the improper admission of three areas of testimony. First, Petitioner argues that the trial court admitted improper hearsay testimony. Second, Petitioner challenges reference to the fact that the victim had a sexually transmitted disease. Third, Petitioner argues the trial court improperly allowed testimony of uncharged sexual acts between himself and the victim.

"Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). A question concerning the admissibility of evidence does not rise to the level of a constitutional violation unless a violation of a state evidentiary rule results in the denial of fundamental fairness. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

> The question is not whether the admission of this evidence was improper under the [rules governing scientific evidence], or whether the evidence was inadmissible on some other state law basis. Rather, the only issue

for this Court on habeas review is whether the admission of the evidence denied defendant a fair trial; that is, whether the evidence was 'almost totally unreliable' such that 'the factfinder and the adversary system w[ould] not be competent to uncover, recognize, and take due account of its shortcomings.'

*Coy v. Renico*, 414 F. Supp. 2d 744, 761 (E.D. Mich. 2006) (Rosen, J.) (quoting

*Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).

### 1. Victim's Brother's Testimony

Petitioner argues that the trial court erred in admitting testimony from the victim's brother, Trevor Young, relaying statements made to him by his mother. After relating that, when he was four, he had seen the victim and Petitioner having intercourse, the prosecutor asked him how he knew what they were doing. Young replied that his mother had told him that they were having intercourse.

Petitioner's argument that the statement was incorrectly admitted under Michigan law is not cognizable on habeas review. He also claims that admission of the statement violated his rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable.

The Michigan Court of Appeals held that the testimony was not hearsay because the statements were not offered to prove the truth of the matter asserted, but were,

instead, offered to explain how a four-year-old realized that what he observed was sexual activity. A state court evidentiary decision regarding whether a statement is hearsay binds a federal court on habeas review. *Johnson v. Renico*, 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004); *see also DeJesus v. Jones*, No. 5:04-cv-56, 2007 WL 2479338, at *12 (W.D. Mich. Aug. 28, 2007) (holding that a federal court on habeas review will not reexamine a state court's decision that a statement was not hearsay under state rules of evidence).

"The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Thus, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay—in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir.2005); *accord United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to prove the truth of the matter asserted, the Confrontation Clause does not apply."). The court has no basis for questioning the trial court's decision that the testimony at issue was not offered for a hearsay purpose. Petitioner, therefore, has not established a Confrontation Clause violation.

### 2. Testimony Regarding Sexually Transmitted Disease

Petitioner argues that he was denied a fair trial when the trial court allowed testimony that the victim had a sexually transmitted disease. Petitioner maintains that the testimony was irrelevant and unduly prejudicial. A nurse, discussing the victim's

July 1999 medical examination, testified that the victim suffered from venereal warts. A police detective testified that when he interviewed the victim in 2003 she claimed to have contracted the sexually transmitted disease from Petitioner. The police detective admitted that the police did not execute a search warrant to determine if Petitioner had an STD.

The Michigan Court of Appeals held that admission of this testimony was relevant and not unduly prejudicial, reasoning, in relevant part:

> Because Litteral's theory was that the victim's allegations of sexual assault were fabricated, evidence that she had an STD, coupled with testimony that STDs are contracted through sexual intercourse, was relevant because it tended to corroborate her claims of sexual assault. Because the evidence was not linked to Litteral, however, the probative value of the evidence was not considerable. But the danger of unfair prejudice was also not high. It was apparent that there was no evidence that Litteral had an STD and that the police never attempted to test him. Moreover, defense counsel used the fact that Litteral was never tested to support the defense. Also, Litteral was not precluded from presenting evidence that he was not the source of the victim's STD.

*Litteral*, slip op. at 9.

Petitioner has failed to show that the trial court's admission of this testimony was contrary to or an unreasonable application of Supreme Court precedent or denied him his fundamental right to a fair trial. As noted by the court of appeals, because Petitioner was not shown to have an STD, the testimony that the victim had one was not linked to Petitioner. While the jury may have inferred that Petitioner transmitted the STD to the victim, they were not asked to make that inference and, given the overwhelming evidence against Petitioner, admission of the discrete references to an STD did not deprive Petitioner of a fair trial. Petitioner is not entitled to habeas corpus relief with respect to this claim.

### 3. Other Acts Evidence

Petitioner next claims that he was denied a fair trial because of repeated reference to uncharged sexual acts between himself and the victim and the admission of evidence that he physically abused the victim's mother.  The Michigan Court of Appeals held that the evidence was not offered to show that Petitioner had a bad character.  Instead, it was offered to assist the jury in weighing the victim's credibility.  The state court reasoned that "limiting the victim's testimony to the four charged isolated acts would have seriously undermined the victim's credibility in the eyes of the jury." *Litteral*, slip op. at 10.  Moreover, the state court held that the trial court's cautionary instruction limited the potential for unfair prejudice.  The Michigan Court of Appeals further held that evidence that Petitioner physically abused the victim's mother was properly admitted because it was relevant to explain the victim's delay in reporting the abuse.  The victim explained that she did not earlier report the sexual abuse because Petitioner had threatened to hurt her and her mother.

The United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).  Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Consequently,

20

there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513.  Petitioner's challenge to the admission of other acts evidence, therefore, does not warrant habeas relief.

### D.  Sentencing Claims

Petitioner argues that his sentences of forty to eighty years' imprisonment for each of the criminal sexual conduct convictions violate the United States and Michigan Constitutions and the principles of proportionality.  He also argues that his sentence was improperly based upon facts not admitted by him or determined by the jury.

There exists no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957 (1997).  However, the Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime."  *Id.* at 995.  The Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'."  *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotations omitted).

Under Michigan law, the maximum sentence for first-degree criminal sexual conduct is life imprisonment, Mich. Comp. Laws § 750.520b.  Petitioner's sentences did not exceed the statutory maximum for his offenses.  Accordingly, Petitioner fails to prove an Eighth Amendment violation under which he would be entitled to habeas corpus relief.  Also, the court need not decide whether the sentence violates the Michigan Constitution because "[i]n conducting habeas review, a federal court is limited

21

to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68.

Petitioner also claims that the sentencing judge sentenced him based upon facts not found by a jury or admitted by him. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Michigan has an indeterminate sentencing system for most crimes, including first-degree criminal sexual conduct. The maximum term of imprisonment is set by law. *People v. Drohan*, 475 Mich. 140, 160-61 (2006).

In *Blakely v. Washington*, 543 U.S. 296 (2004), the Supreme Court addressed indeterminate sentencing systems and stated that such systems do not violate the Sixth Amendment. The Court explained:

> [The Sixth Amendment] limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 308-09.

22

Judicial factfinding may not be used to impose a sentence "beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490. In this case, the sentencing court did not exceed the statutory maximum for Petitioner's crime. Therefore, the sentencing scheme did not run afoul of the Sixth Amendment. Because *Blakely* does not apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's sentence did not violate the petitioner's constitutional rights. *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009).

### E. Denial of Motion for *Ginther* Hearing

Finally, Petitioner argues that the state court's denial of his request for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973), entitles him to habeas corpus relief.

A petitioner must exhaust his state court remedies prior to seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) & 2254(c). A petitioner "'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Tornik*, 986 F.2d 1506, 1516 (6th Cir. 1993). Petitioner failed to present this claim in state court. It is, therefore, unexhausted.

A federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court). The court has concluded that this claim does not warrant

23

habeas corpus relief.  Accordingly, in the interests of efficiency and justice, the court will address Petitioner's claim rather than dismiss the petition on the ground of failure to exhaust.  *See* 28 U.S.C. § 2254(b)(2); *Cain*, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

*Ginther* does not confer an absolute right to an evidentiary hearing in all cases where a defendant alleges ineffective assistance of counsel, and "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Therefore, Petitioner's claim is not cognizable on habeas corpus review.

## F.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the court will deny a

certificate of appealability.

## IV.  CONCLUSION

The petitioner has not shown he is incarcerated in violation of federal law as

determined by the Supreme Court.

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. #

1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

      S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 29, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, June 29, 2010, by electronic and/or ordinary mail.

      S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522